**David Len MOULTON, Appellant**

v.

**The STATE of Texas.**

**No. PD–1889–11.**

Court of Criminal Appeals of Texas.

March 6, 2013.

Jason Lee Horton, Attorney at Law, Texarkana, TX, for Appellant.

John R. Messinger, Assistant State Prosecuting Attorney, Lisa C. McMinn, State's Attorney, Austin, TX, for the State.

## OPINION

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, and COCHRAN, JJ., joined.

Appellant was convicted of murder and sentenced to sixty years in prison. Finding that Appellant suffered "some harm" by the erroneous submission of the "by manner and means unknown" jury charge, the Sixth Court of Appeals reversed the judgment of the trial court and remanded for further proceedings.[1] The State filed a petition for discretionary review, which we granted on four grounds:

(1) Did Appellant's objection to all three manners and means on the basis that cause of death was not established preserve a complaint about the submission of the unknown means of asphyxiation on grounds consistent with *Sanchez?*

(2) Is Appellant barred from complaining about alleged *Sanchez* error that results from his strategic decisions?

(3) Does the reasoning of *Sanchez* apply outside the narrow confines of that case, i.e., a sealed crime scene with the suspect inside, combined with testimony expressly limiting the manner and means of the cause of death?

(4) Did Appellant suffer actual harm, egregious or otherwise, from submission of an unknown manner an means of asphyxiation?

We now reverse the judgment of the court of appeals in light of our recent opinion on motion for rehearing in *Sanchez v. State.*[2]

## BACKGROUND

### Summary of Facts

Appellant called 911 and explained that he had found his wife Rebecca floating, face down and unresponsive, in the middle of their pond. Emergency personnel responded to the call and attempted to revive Rebecca, but she was pronounced dead at the hospital. Hospital records listed the mechanism of injury as "drowning."

At trial, evidence was introduced that indicated a possible history of domestic violence in the marriage, that Appellant's defense that he had left the house and been gone for around forty minutes during the time of Rebecca's death was questionable, and that Rebecca hated the pond, and would not have gone into the heavily wood-

**1.** *Moulton v. State,* 360 S.W.3d 540, 567 (Tex. App.-Texarkana 2011, pet. granted).

**2.** *Sanchez v. State,* 376 S.W.3d 767 (Tex.Crim. App.2012).

ed area alone wearing flip-flops. A detective who was called to the scene and examined the pond explained that "there was no impression or anything where someone might have taken a fall into the pond" and to him it did not appear as if Rebecca had just fallen in.

### Indictment

Appellant was indicted for murder. In a three-paragraph indictment, the State alleged Appellant did then and there:

(1) knowingly or intentionally cause the death of [the victim] by manual strangulation by holding her neck with his hand in a manner that would cause death by asphyxiation;

(2) knowingly or intentionally cause the death of [the victim] by drowning [the victim] in a pond; and

(3) knowingly or intentionally cause the death of [the victim] by asphyxiation by means unknown to the grand jury.

### Evidence of Manner and Means

The medical examiner explained that in eighty-five percent of manual strangulation cases, petechiae—small red or purple spots caused by a hemorrhage—are present in the eye. The medical examiner did not find petechiae in Rebecca's eye, but there was some sign of injury close to the collarbone—a "3/16–inch angulated red mark," a puncture of the skin in that area and a 1–inch area of "soft tissue hemorrhage" just below the puncture. She had another hemorrhage on the right side of her neck, but there were no bruises or abrasions on her neck area, and there was no way to determine whether the red mark occurred before or after her death. Appellant testified that the paramedics dropped Rebecca multiple times when they were loading her onto the gurney and that they placed a C collar on her neck which caused the red mark. However, the paramedics testified that Rebecca was never dropped from the gurney and that they did not place a C collar on her neck. Additionally, there were no signs of a struggle, which would normally be found when examining a healthy adult who has been strangled. Some sort of asphyxia was suspected because her lungs had "froth in large airways" containing "edema, intra-alveolar hemorrhage and aspirated food." However, asphyxia was not listed as the cause of death because the noted symptoms of asphyxia could have been the result of the resuscitation efforts.

The autopsy report concluded that Rebecca had died as a result of "undetermined causes." The comment section of the report stated: "Based on investigation and injuries found at autopsy, this case is suspicious for homicide." However, at trial it was discovered that this statement was based on a report that contained inaccurate statements. Over a year after the original autopsy report was completed, it was amended to list "homicidal violence" as the cause of death based on newly submitted affidavits from multiple people that detailed the rocky relationship between Appellant and Rebecca and her dislike of the woods.

The medical examiner testified at trial that the cause of death was "some sort of asphyxia. Could be drowning, could be strangulation, could be suffocation. We can't specifically pick which one, because when you deal with an asphyxial type of death, the findings are very subtle."

### Jury Charge

The jury was charged in the disjunctive, with the same three alternative methods of murder that were alleged in the indictment. The jury was also instructed that it did not have to agree on whether the death was caused by strangulation, drowning, or asphyxiation by manner and means unknown, but was required to unanimously

agree that Appellant intentionally or knowingly caused the death.

Defense counsel objected, saying, "on cause of death, which must be proved in every murder case, the evidence concerning cause of death must come from a qualified medical expert. One expert testified that it was undetermined. Another expert testified to homicidal violence per the autopsy. Therefore, there is no credible cause of death evidence concerning strangulation, drowning, or asphyxiation by an unknown means." The court overruled the objection.

The jury found Appellant guilty and sentenced him to sixty years in prison.

### Court of Appeals

On appeal to the Sixth Court of Appeals, Appellant again complained about the submission of the "by manner and means unknown" jury charge. The court of appeals agreed that the charge was erroneous based on "a history of caselaw" involving such allegations.[3] The court relied on cases such as *Corbett v. State*,[4] *Hicks v. State*,[5] *Rosales v. State*,[6] and our 2010 decision in *Sanchez v. State*[7] and concluded that the proper analysis is to ask whether the manner and means "were truly unknown or whether specific acts were shown to constitute the manner and means of the commission of the offense."[8] Ap-

plying *Sanchez*, the court agreed that the charge here was erroneous because, like *Sanchez*, here "there was a known choice of several options" that should have been submitted to the jury "because the manner and means was not entirely unknown."[9] The court reasoned that the medical cause of death was asphyxia and that what caused the asphyxia was at issue.[10] Therefore the jury charge should have been amended to remove the submission of "manner and means unknown," and should have instead, simply given the jury the multiple causes of asphyxia that were presented by the evidence.[11] The court then reviewed the case for egregious harm and concluded that Appellant suffered "some harm" by the error.[12]

## ARGUMENTS OF THE PARTIES

### The State's Arguments

In its first ground for review, the State argues that Appellant's objection at trial was inadequate to preserve error. The State posits that Appellant's objection that there was no evidence supporting any manner and means was essentially a motion for a directed verdict. In *Sanchez*, the appellant specifically complained about the portion of the charge regarding the manner and means being unknown to the grand jury. Here, Appellant objected to the entire charge and was not specific.

3. *Moulton*, 360 S.W.3d at 554.

4. 493 S.W.2d 940 (Tex.Crim.App.1973) (requiring the State to prove the elements contained as alleged in the indictment).

5. 860 S.W.2d 419, 424 (Tex.Crim.App.1993) (requiring the State to prove that the grand jury exercised due diligence, but was unable to decipher the means of committing the offense).

6. 4 S.W.3d 228 (Tex.Crim.App.1999) (overruling *Hicks* and holding that the due-diligence requirement was met when a member of the grand jury testified that the jury was unable to determine the manner and means).

7. PD–0961–07, 2010 WL 3894640, 2010 Tex. Crim.App. LEXIS 1242 (Tex.Crim.App. Oct. 6, 2010).

8. *Moulton*, 360 S.W.3d at 556.

9. *Id.* at 559.

10. *Id.* at 558–59.

11. *Id.* at 559.

12. *Id.* at 563.

Because of this, the State argues that, even if the charge was erroneous it should have been reviewed for egregious harm instead of some harm.

■ The State further argues that Appellant's objection was not only inadequate to warrant a some-harm review, but also that, based on *Sanchez*, it was so insufficient that it did not preserve charge error at all. The State explains that Appellant's objection to the jury charge was too late to preserve his complaint because *Sanchez* requires that a defendant object to the lack of notice before trial or during trial.[13] The State also argues that Appellant's argument at trial—that there was no evidence on cause of death—was inconsistent with his argument on appeal when he claimed that there was sufficient evidence to preclude an "unknown" charge. The State uses our opinion in *Tolbert v. State*[14] for support and concludes that Appellant's "all or nothing" strategy means that there is no jury-charge error at all.

In its third ground for review, the State points out that, unlike *Sanchez*, the record in this case demonstrates that all of the evidence that could have been presented at trial was neither ascertained nor presented. For example, in *Sanchez*, the victim and the suspect were found in a sealed hotel room by the police, but here (according to Appellant), the victim was found floating in a pond. It was not known if the victim suffered the fatal trauma in the pond or somewhere else, and it was not clear that she had drowned because she was found floating and not submerged. The State argues that this list of possible

manner and means is so broad as to be tantamount to an unknown manner and means allegation. Finally, in its fourth ground for review, the State asserts that based on the state of the evidence, the court of appeals should have concluded that the "unknown manner and means" instruction was warranted, not that it was harmful error.

### Appellant's Arguments

Appellant argues that his pretrial objections to the indictment and later objections to the jury charge were sufficient to preserve error and cites our decision in *Tucker v. State*, in which we explained the general prerequisite to preserve a complaint for appellate review. Appellant asserts that it is clear that he met this prerequisite and objected with enough specificity to later argue that the jury was erroneously charged based on the *Sanchez* rationale. Appellant emphasizes that Texas courts have recognized the "difficulty of formulating the proper objection when faced with an unusual type of evidence"[15] and argues that this should be recognized as such a case.

Additionally, Appellant explains that as evidence was introduced at trial, it became apparent that the submission of all three allegations was inappropriate and claims to have made a clear, pretrial objection to the manner and means unknown allegation. Appellant contends that the State's speculation as to Appellant's trial strategy does not render *Sanchez* inapplicable. Appellant explains that *Sanchez* provides no indication as to what objections were made

---

**13.** *See Sanchez,* 2010 WL 3894640, 2010 Tex. Crim.App. LEXIS 1242 at *17–18 (explaining that "[w]here the State has alleged "unknown" manner and means in the indictment or jury charge, the defendant may challenge the propriety of the "unknown" allegation before trial and (if the evidence at trial has made a second inquiry necessary) at the con-

clusion of the evidence, but before the charge is submitted to the jury.")

**14.** 306 S.W.3d 776, 778–79 (Tex.Crim.App. 2010).

**15.** *Woods v. State,* 13 S.W.3d 100, 105 (Tex. App.-Texarkana 2000, pet. ref'd).

by the appellant in that case and that the variance between the allegations in the indictment and proof in this case created a unique situation that was not addressed in *Sanchez*. More specifically, Appellant argues that the evidence was insufficient to convict him on either of the two "known" allegations, while the medical expert's testimony precluded the submission of the "unknown" allegation. Appellant argues that this situation differs from *Sanchez* and because of this, his trial strategy should have no bearing on the outcome of the case.

In response to the third and fourth grounds for review, Appellant asserts that the reasoning of *Sanchez* does apply outside the narrow confines of the case and that the court of appeals correctly determined that he suffered some harm from the erroneous jury charge. Appellant argues that in *Sanchez,* the evidence in support of the conviction was overwhelming, but the testimony as to manner and means was not. Appellant further explains that the court of appeals engaged in the same inquiry as our Court in *Sanchez* and concludes that once the erroneous charge was removed, the evidence was insufficient to convict on other theories.

## APPLICABLE LAW

Because we had not yet handed down our opinion on motion for rehearing in *Sanchez*, the court of appeals and the parties in this case relied on our original *Sanchez* opinion. Therefore, we will begin with a summary of our *Sanchez* opinion on motion for rehearing.

In *Sanchez*, two guests in a motel room called the police after hearing a woman screaming in an adjoining room. Upon arrival, the police heard a stun gun go off inside the room in which the woman had screamed. When the police entered the room, they found the appellant lying next to his dead, naked girlfriend. His girlfriend's face and neck were bruised and there were marks from a stun gun on both her neck and chest. There was only one door to the room, and it had been barricaded. Also all of the windows had been painted shut. At trial, the medical expert listed "asphyxia by strangulation" as the cause of death, but indicated that he was unsure as to whether the cause of asphyxia was strangulation or the stun gun. Similar to this case, the appellant was charged with murder and both the indictment and the jury charge included two known manner and means theories and two unknown manner and means theories. The jury charge allowed the jurors to consider each manner and means in the disjunctive, and appellant was convicted under a "manner and means unknown" theory. The Thirteenth Court of Appeals applied *Hicks v. State,*[16] and reversed for jury-charge error.

In our recent opinion on motion for rehearing, we explained that the *Hicks* rule relied upon by the court of appeals is no longer viable since the adoption of the "hypothetically correct" jury charge in *Malik v. State,*[17] and determined that suf-

---

16. 860 S.W.2d 419, 424 (Tex.Crim.App.1993) (holding that "[w]hen an indictment alleges that the manner or means of inflicting the injury is unknown and the evidence at trial does not establish the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand jury"). The Court further explained that "if the evidence at trial shows what object was used to inflict the injury, then the State must prove that the grand jury used due diligence in attempting to ascertain the weapon used." *Id.*

17. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997) (determining that sufficiency of the evidence should be assessed using the elements of the crime as defined by the hypothetically correct jury charge for the case).

ficiency review should be conducted by comparing the evidence to the hypothetically correct jury charge.[18] We further explained that *Malik* pertains to charge error only in that it might assist the appellate court in determining whether the actual charge was phrased correctly based on its determination of what the hypothetically correct jury charge might be.[19] We held that it was error to include the unknown manner and means because there was no evidence to support it.[20] Instead there was a limited list of known alternatives for the manner and means of the cause of death.[21] Therefore, we concluded that the jury charge should have been reduced to the two known theories that were supported by the evidence at trial.[22]

## ANALYSIS

■ Because the first and second grounds for review focus on preservation issues, we shall begin with a discussion of Appellant's third ground for review to determine whether there was jury-charge error that needed to be preserved.

In the third ground for review, this Court is asked to determine whether the reasoning of *Sanchez* applies outside the narrow confines of that case. While Appellant's and State's briefs on this issue, as well as the court of appeals's decision were written before our decision on motion for rehearing in *Sanchez* we are still able to conclude that the reasoning from *Sanchez* may apply under different circumstances. However, in this instance, the court of appeals incorrectly held that the manner and means could be determined from a known choice of several options. It is clear that this case is distinguishable from

*Sanchez*, in which there was a closed universe of possibilities regarding manner and means. In *Sanchez*, we stated that the court's instructions should be reduced to the theories that are supported by the evidence at trial.[23] In this case, each of the three theories included in the jury charge could be supported by the evidence given by the medical expert at trial. The means unknown theory is supported by the fact that the victim's injuries did not conclusively point to a manner and means of asphyxiation; rather her injuries could have pointed to a variety of possibilities. In *Sanchez*, the victim, the defendant, and a weapon were found in a sealed hotel room directly after the crime. This information led to the court's conclusion that "manner and means unknown" was an inappropriate jury charge because there was a limited list of known alternatives. However, in this case, there is unlimited information that may be unknown, because the crime scene does not point to a conclusive list of possibilities. A limited list of known alternatives does not exist. Therefore, the indictment correctly alleged an unknown manner and means as well as all options supported by the evidence. Also, because manner and means remained unknown at the conclusion of the evidence, the instruction on unknown manner and means was properly submitted to the jury.

## CONCLUSION

Because we hold that the trial court did not commit jury-charge error, there is no need to address the first and second grounds for review regarding preservation or the fourth ground for review concerning

18. *Sanchez*, 376 S.W.3d at 772.

19. *Id.*

20. *Id.* at 774.

21. *Id.*

22. *Id.*

23. *Id.* at 774.

the harm analysis. We conclude that based on *Sanchez*, the trial court did not err by instructing the jury on the "unknown" manner and means of committing the offense. Therefore, we reverse the judgment of the court of appeals.

KELLER, P.J., and COCHRAN, J., filed concurring opinions. WOMACK, J., concurred.

ALCALA, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined.

KELLER, P.J., filed a concurring opinion.

I agree that the trial judge was not required to instruct the jury on the specific manner and means of committing murder in this case. But I also believe that a trial judge is not required to instruct on the specific manner and means of committing murder *in any case*. In our recent opinion in *Johnson v. State*,[1] we explained:

> "[M]urder is a result-of-conduct crime. What caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed. Variances such as this [regarding the method by which death is caused in a murder prosecution] can never be material because such a variance can never show an "entirely different offense" than what was alleged.[2]

If a variance can never be material, it can never render the evidence legally insuffi-

cient to support the conviction.[3] If the failure to prove an allegation cannot render the evidence legally insufficient to support the conviction, it is because the State is not required to prove the allegation.[4] And if "the State is not bound to prove such an allegation, the allegation should not be a part of the jury charge, because ... the State is entitled to the broadest submission of its theories of liability that are authorized by the charging instrument and supported by the evidence."[5] Consequently, the jury charge need not ever specify the (non-statutory) manner and means by which a murder is committed or even that the manner and means is unknown.

With these comments, I join the Court's opinion.

*OPINION*

COCHRAN, J., filed a concurring opinion.

I agree that the trial judge did not err when he instructed the jury on the "unknown" manner and means of committing murder. I write separately because I believe that this area of law has become overly formalistic and divorced from its original purpose of giving notice to the defendant.

The common-law rule[1] of including an allegation of a "manner and means unknown to the grand jury" in an indictment when no one knows exactly how an offense was committed ensures that the State

---

1. 364 S.W.3d 292 (Tex.Crim.App.2012).

2. *Id.* at 298.

3. *Id.* at 299.

4. *In re State ex rel. Weeks*, 391 S.W.3d 117, 126 (Tex.Crim.App.2013).

5. *Id.*

---

1. Although the Code of Criminal Procedure requires the State to include a description of unknown persons and property, as well as a statement that the precise name of the person or property is unknown to the grand jury, in its indictments, there is no such statutory requirement for the unknown "manners and means" by which an offense is committed. *See* TEX.CODE CRIM. PROC. arts. 21.08 & 21.09.

gives the defendant as much notice as it can about its theory of how the crime was committed. The rule discourages the State from either hiding evidence from the grand jury or conducting a lackadaisical investigation before seeking a grand jury indictment. As was explained in the 1883 case, *Walker v. State*, the State need not allege the specific manner and means by which the defendant purportedly murdered someone if the indictment states that the "murder was committed 'in some way or manner, and by some means, instruments and weapons, to the [grand] jurors unknown.' " [2]

Few Texas cases explain the purpose or genesis of this policy, but one of the cases that the *Walker* court relied on was *People v. Cronin*,[3] an 1867 California Supreme Court decision in which the "flimsy" historical purpose for the rule was addressed:

2. 14 Tex.App. 609, 627 (1883).

3. 34 Cal. 191 (Cal.1867). Cronin had argued that

> [t]he Court erred in overruling the demurrer to the first count of the indictment. This count is the same as if it had merely said, Timothy Cronin killed Julia Cronin feloniously, etc., but in what manner is not known. It is a mere conclusion; not a fact is stated—no wound of any kind, nor how the deceased was found, or where; not even the condition of her remains; in fact, nothing is stated advising the defendant as to what preparation it was necessary to make in defense. If it was alleged that she was poisoned, he could have had her disinterred, and her stomach analyzed; if a gun shot wound, that he never had weapons about him; if a blow or cut, he could have summoned physicians to show that such a blow or cut would not produce death; if from strangulation, he would have prepared to meet that charge. But not a fact is stated, and the defendant is called upon to defend his life, without knowing what is charged against him.
>
> . . .
>
> To hold, then, that an indictment containing no fact is sufficient, *because* the Grand

The only reason assigned by the common law why the manner and means by which the homicide was committed should be stated in the indictment, was that the defendant might be fully informed as to the case against him, and thereby enabled to prepare for his defense. As we had occasion to remark in the case of The *People v. King* [27 Cal. 507 (1865) ], this reason of the common law was but a flimsy pretext, for if the defendant was guilty, he stood in no need of information as to the means by which he committed the crime; and if not guilty, the information that he did the act in a particular way, or by the use of particular means, could not assist him in the preparation of his defense. Hence, in the legislation of this State, and in the practice of this Court, the rules of the common law, in respect to indictments, have been more and more relaxed as occasion has suggested.[4]

> Jury *could not ascertain* the facts, is simply begging the question. If the Grand Jury could ascertain that *the defendant committed the deed*, it could have set forth the facts upon which such a finding was predicated, without which the indictment stands *with simply the fact alleged that defendant* committed the murder. The District Attorney could, under our statute, if there was any doubt as to the precise mode in which death was produced, have found as many counts as the exigency of the case required. *Id.* at 197–98.

4. *Id.* at 200. The California Supreme Court further explained:

> Thus it has been held that a description of the weapon is not necessary, (*People v. Steventon*, 9 Cal. 273 (1858) ) and that it is not material to describe the wound, further than to say that it was mortal, or that the party died of the wound. (*People v. Judd*, 10 Cal. 313 (1858) .) While it may be well to state the means by which death was caused, we do not consider such a course indispensable. The killing is the ultimate and issuable fact, and we can perceive no satisfactory reason why the means by which it was done should be stated in every case,

It took more than 100 years, but now the Texas indictment rules have also been relaxed, both by constitutional amendment and by statute.[5]

The original rule was simple in theory and in practice: If, after making a diligent inquiry, the grand jury cannot determine precisely what was the manner (the *actus reus*—shooting, poisoning, hitting, stabbing, strangling) of the offense or the means (the instrument—gun, sword, knife, hands, manhole cover) that the offender used to commit the offense, just say so in the indictment. Do the best you can; that is good enough. In the past, we should not have made a mighty mountain out of a pleading molehill. We do not do so in these times.

If the defendant is flummoxed by the failure to have greater notice, he may file a motion to quash the indictment and put the State to its burden to show that it still does not know the precise manner and means. If the State does have more information about the manner and means (or at least has a more precise range of possibilities), then it must give the defense notice of that evidentiary information. If, at the motion to quash hearing, it turns out that the State now knows exactly what manner and means it intends to prove, the trial judge may order the State to amend the

and certainly not in a case where the means are unknown. In this case, as yet, the means by which the homicide was committed lie mainly in conjecture. True, the Grand Jury might have multiplied counts until all possible modes and means of inflicting death yet discovered had been described; but to what good purpose? The defendant, in that case, would have obtained no valuable information. He would have been as little informed as to the real means as he is by the present indictment; and yet the one or the other course must be adopted, where the means are unknown, for the criminal cannot be allowed to escape justice because the precise means by which the crime was committed cannot be discovered.

*Id.* The California Court also referred to the "famous" 1850 *Webster* case from Massachusetts, in which the Massachusetts Supreme Court explained the common-law "unknown manner and means" indictment rule:

To a person unskilled and unpractised in legal proceedings, it may seem strange that several modes of death, inconsistent with each other, should be stated in the same document. But it is often necessary; and the reason for it, when explained, will be obvious. The indictment is but the charge or accusation made by the grand jury, with as much certainty and precision as the evidence before them will warrant. They may be well satisfied that the homicide was committed, and yet the evidence before them may leave it somewhat doubtful as to the mode of death; but, in order to meet

the evidence as it may finally appear, they are very properly allowed to set out the mode in different counts; and then if any one of them is proved, supposing it to be also legally formal, it is sufficient to support the indictment.

. . .

The rules of law require the grand jury to state their charge with as much certainty as the circumstances of the case will permit; and, if the circumstances will not permit a fuller and more precise statement of the mode in which the death is occasioned, this count conforms to the rules of law. I am therefore instructed by the court to say, that, if you are satisfied upon the evidence, that the defendant is guilty of the crime charged, this form of indictment is sufficient to sustain a conviction.

*Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 322–23 (Mass.1850).

5. *See generally Studer v. State*, 799 S.W.2d 263, 267 (Tex.Crim.App.1990) (setting out prior cases and noting that, before the 1985 constitutional and legislative changes, "[a] substance defect was considered 'fundamental error' since a charging instrument with such a defect failed to confer jurisdiction upon the trial court, and any conviction had upon that instrument was therefore void. Also apparent from the caselaw is that this Court has used the terms 'substance defect,' 'fundamental error,' and 'fatally defective' interchangeably when addressing errors in charging instruments which led to void convictions.").

indictment or seek a new one that is more specific.

Regardless of whether the defendant files a pretrial motion to quash the indictment, if the evidence at trial clearly establishes a specific manner and means, or a combination of various alternatives, then the judge should omit the "unknown" language in his jury charge. Instead, as the majority states, the jury charge should be written to give the jury a choice from the limited list of possibilities regarding manner and means.[6] If, after considering all of the evidence adduced, the precise manner and means still cannot be identified, as in this case, the judge should leave the "unknown" language in the jury charge. Here, no one, including the medical examiner, could be certain of the specific manner of Rebecca Moulton's death; it was "some sort of asphyxia," but that was as good as the witness and the science could tell. If the precise manner and means cannot be determined by the medical examiner, then we have to be satisfied that the manner and means may well be unknown to the jury as well. What matters is that the jury was convinced, beyond a reasonable doubt, that appellant was the person who intentionally caused his wife's death, however he did it.

I join the majority opinion.

ALCALA, J., filed a dissenting opinion in which PRICE and JOHNSON, J.J., joined.

The court of appeals reversed the conviction of David Len Moulton, appellant, who was convicted of killing his wife, Rebecca Moulton, who was found dead in a pond on their property. *Moulton v. State*, 360 S.W.3d 540, 543 (Tex.App.Texarkana 2011). The majority opinion reverses the court of appeals by finding no error in the jury charge. I respectfully dissent for two reasons. First, because the court of appeals has not had the opportunity to consider this case in light of this Court's opinion on rehearing in *Sanchez v. State,* we should remand this case to afford the court that opportunity. *See Sanchez v. State,* 376 S.W.3d 767 (Tex.Crim.App. 2012). Second, I disagree with the majority opinion's holding on the merits that the trial court properly instructed the jury to convict if the evidence proved "asphyxiation by means unknown to the grand jury." I find that this instruction is erroneous in its reference to the grand jury, but conclude that the error is harmless.

## I. This Court Should Remand the Case to the Court of Appeals

The court of appeals analyzed this case under this Court's original opinion in *Sanchez,* but, since then, we have withdrawn that opinion and issued a materially different opinion on rehearing. *Compare Sanchez v. State,* No. PD–0961–07, 2010 WL 3894640, 2010 Tex.Crim.App. LEXIS 1242 (Tex.Crim.App. Oct. 6, 2010) (orig.op.), *with* 376 S.W.3d 767 (Tex.Crim.App.2012) (op. on reh'g). The original opinion focused on whether the manner and means were unknown or unknowable, but the opinion on rehearing abandoned that distinction and focused on the hypothetically correct jury charge based on the evidence actually introduced at trial. *See Sanchez,* 376 S.W.3d at 772–73; *see also Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). In the *Sanchez* opinion on rehearing, we expressly overruled the *Hicks* rule, which had required evidence regarding what the grand jury knew at the time it issued the indictment when the indictment

---

**6.** Majority op. at 810 (noting that, in *Sanchez v. State,* 376 S.W.3d 767 (Tex.Crim.App.2012) (op. on reh'g), there was a "limited list of known alternatives" that could explain the victim's cause of death).

alleged that the manner and means of inflicting the injury was unknown. *See Sanchez,* 376 S.W.3d at 771–72 (overruling *Hicks v. State,* 860 S.W.2d 419 (Tex.Crim. App.1993)). We held that, because the evidence in that case supported "only a limited list of known alternatives for the manner and means of the cause of death," the jury charge erroneously permitted the jury to convict Sanchez by referring to an unknown manner and means. *Id.* at 774. The court of appeals tailored its analysis to our original opinion in *Sanchez* and did not have the benefit of our opinion on rehearing in that case. *Moulton,* 360 S.W.3d at 555–63.

The materiality of the original *Sanchez* opinion to the court of appeals's analysis in this case is evident in that three of the four grounds that we granted in appellant's petition for discretionary review refer to it expressly by name.[1] It is ironic that this Court's majority opinion reverses the court of appeals for its misapplication of *Sanchez* when the court of appeals has never actually applied our *Sanchez* opinion on rehearing. Although the majority opinion suggests that we must resolve the merits of this case in the interest of judicial economy, this undermines our role as a court of last resort because we are not reviewing the decision of the lower court, but rather are making an end run around

it. I, therefore, dissent from this Court's decision to address the merits of this appeal rather than remanding the case to the court of appeals.

## II. The Jury Instructions Were Erroneous, But the Error Was Harmless

Because the majority opinion addresses the merits of the case, I must also address the merits to explain why I conclude that it errs in holding this jury instruction proper. I would find the jury instructions erroneous but harmless.

### A. Error Analysis

The majority opinion concludes that the manner and means are unknown because the crime scene does not point to a conclusive list of possibilities.[2] It states, "The means unknown theory is supported by the fact that the victim's injuries did not conclusively point to a manner and means of asphyxiation; rather her injuries could have pointed to a variety of possibilities." The majority opinion then attempts to distinguish *Sanchez* by asserting that, in *Sanchez,* there was a known list of alternatives, unlike the unknown alternatives here. *See Sanchez,* 376 S.W.3d at 774. This determination not only mischaracterizes the evidence in the record, but it also misunderstands the holding in *Sanchez.*[3]

1. Three of the four issues in appellant's petition for discretionary review state,
    (1) Did appellant's objection to all three manners and means on the basis that cause of death was not established preserve a complaint about the submission of the unknown means of asphyxiation on grounds consistent with *Sanchez* ?
    (2) Is an appellant barred from complaining about alleged *Sanchez* error that results from his strategic decision?
    (3) Does the reasoning of *Sanchez* apply outside the narrow confines of that case . . . ?
    The fourth issue challenges the court of appeals's harm analysis.

2. The majority opinion states, "[I]n this case, there is unlimited information that may be unknown, because the crime scene does not point to a conclusive list of possibilities." However, a reviewing court should examine all the evidence and not just the crime scene, which may or may not be relevant to the question of whether the manner and means are unknown. *See Sanchez v. State,* 376 S.W.3d 767, 774 (Tex.Crim.App.2012).

3. I agree with the Honorable Judge Cochran's concurring opinion that, historically, this area of the law was overly formalistic, but I believe that we have made great strides toward clarifying this area. For example, we no longer

All three of the paragraphs in the charge alleging the manner and means of death permitted the jury to convict appellant if the evidence proved that he (1) knowingly or intentionally caused the death of the complainant and (2) caused the complainant's death by asphyxiation. Two of the three paragraphs specifically referred to asphyxiation, one by stating, "by asphyxiation" by manual strangulation, and one by stating, "by asphyxiation by means unknown to the grand jury." The third paragraph, which stated that appellant caused the death "by drowning [the complainant] in a pond[,]" also effectively required the jury to find that he caused the death by asphyxiation because the evidence at trial conclusively established that drowning is a form of asphyxiation. Thus, to convict appellant under any of the theories submitted, the jury had to unanimously find that he knowingly or intentionally caused the complainant's death by asphyxiation. The only remaining question is whether the jury charge was erroneous because one of the three paragraphs more particularly alleged that the asphyxiation was "by means unknown to the grand jury." [4]

At trial, two medical experts testified, one for the State and one for the defense. The State's expert, Dr. McClain, performed the autopsy and prepared an original and amended report. In her original report, which she prepared the day after the complainant died, she characterized the cause and manner of death as "undetermined," [5] but noted that it was "suspicious for homicide." She also added that

have the *Hicks* rule, which had required the State to prove what was known to the grand jury when it indicted a defendant. *See Hicks v. State*, 860 S.W.2d 419 (Tex.Crim.App.1993). We now require only that the jury instructions conform to the evidence adduced at trial. *See Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim.App.2012). If the medical examiner gives a finite list of possible manner and means of death, then the manner and means is not unknown; it is known to be within the finite list. In this case, Dr. McClain's testimony describing her supplemental autopsy report gave a finite list of the ways in which the asphyxia could have occurred. By contrast, if the medical examiner testifies that the manner or means of death is unknown and cannot be limited to a finite list of possibilities, then the court should instruct the jury accordingly. Here, Dr. Bux testified that the manner and means of death was entirely unknown, and the original autopsy report contained similar conclusions. Either his testimony or the original autopsy report would have provided the minimal evidence necessary to support the reference to the "unknown" allegation. Therefore, the jury instructions properly alleged "unknown." The present law for jury instructions is not overly complicated, and, in fact, we have determined that, with respect to the elements of an offense, it is ministerial in nature. *See In re State ex rel. Weeks*, 391

S.W.3d 117, 120 (Tex.Crim.App.2013) (not yet reported). All that is required of a trial court is to listen to the evidence and, if any evidence supports the instruction, regardless of whether it is slight or its credibility questionable, give the instruction that conforms to the evidence. *See id.*

4. The majority opinion mistakenly indicates that the indictment and jury charge alleged unknown manner and means. The majority opinion states, "Therefore, the indictment correctly alleged an unknown manner and means as well as all options supported by the evidence. Also, because manner and means remained unknown at the conclusion of the evidence, the instruction on unknown manner and means was properly submitted to the jury." The language of the indictment, which the jury charge tracked, stated, "asphyxiation by means unknown to the jury." The only "unknown" allegation was the "means" of death. Nothing in the indictment or jury charge alleged that the manner of death was "unknown."

5. Dr. McClain testified that the "cause of death is why someone has died, lung cancer, gunshot wound to the head, and then manner of death, there are various manners of death. There are naturals, there are accidents, suicide, homicide, and the undetermined."

"should additional information become available, the cause and manner of death may be amended." In her amended report, which she prepared after there were additional investigative findings "pertaining to domestic abuse," she changed (1) the cause of death to "homicidal violence," which she said meant that "the actions of another person had caused the death of this individual," and (2) the manner of death to "homicide."

At trial, she explained that "the mechanism of death" was "asphyxia." With respect to the type of asphyxia, Dr. McClain stated,

> [T]he mechanism of death is some sort of asphyxia. Could be drowning, could be strangulation, could be suffocation. We can't specifically pick which one[ ] because when you deal with an asphyxial type of death, the findings are very subtle. Could be drowning, could be strangulation, could be suffocation.

Dr. McClain limited the universe of the forms of asphyxia that could have occurred in this case to only four possibilities when she testified,

> Asphyxia you're not going to find much, so I think that's the mechanism. I can't tell you [1] if it was strangulation, [2] if it was suffocation, [3] if it was drowning, or [4] a combination of all three.

Because she testified to four possible forms of asphyxia that could have occurred in this case, Dr. McClain's testimony could not have supported the jury instruction as to "asphyxiation by an unknown means."

Inclusion of a manner and means unsupported by the evidence was precisely why we found the jury charge erroneous in our opinion on rehearing in *Sanchez*. See *Sanchez*, 376 S.W.3d at 774.[6]

But, unlike *Sanchez*, in which only one medical examiner testified about his consistent findings regarding the cause of death, two examiners testified in this case, Dr. McClain and the defense's witness, Dr. Bux, and each of them, at some point in time, determined that the manner and means of death were unknown. Dr. Bux testified that he agreed with the original autopsy report's conclusion that the manner of death was undetermined, explaining that he could not even determine whether it was a homicide.[7] He disagreed with the amended autopsy report that changed the classification of death from undetermined to homicidal violence. More specifically, with respect to the medical findings, Dr. Bux disputed that any medical findings supported the mechanism of death. He testified that he could not conclude that the complainant was "manually strangled," was "drowned in a pond," or died "by asphyxiation by an unknown means." Dr. Bux's testimony and the findings in the original autopsy report each constitute some evidence that the complainant died "by asphyxiation by means unknown." The jury instruction, therefore, properly included this allegation.

The jury instruction, however, permitted the jury to convict appellant if it determined that the complainant died "by asphyxiation by means unknown to the

---

6. In *Sanchez*, we quoted the State's expert who testified that the cause of death in that case was asphyxia, which was defined as a lack of oxygen to the brain. See *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex.Crim.App. 2012) (op. on reh'g). We also explained that what could not be more precisely determined was whether the asphyxia was caused by strangulation, a stun gun, or a combination of the two, but that these comprised "a limited list of known alternatives for the manner and means of the cause of death." *Id.* The limited list of known alternatives, therefore, rendered the manner and means known.

7. When specifically asked, "Do you think it's plausible that it was a homicide?" he answered, "I wouldn't go there, no."

grand jury." Although the evidence supported the allegation, "by asphyxiation by means unknown," there is no evidence as to what the grand jury knew regarding that allegation. Therefore, the four words in the jury instruction, "to the grand jury," were erroneous.[8]

As we observed in *Sanchez*, what was known to the grand jury is not the appropriate question in deciding what the jury instructions should be. *See id.* at 772. Rather, the appropriate question is whether some evidence in the record supports the jury instruction. *See id.* at 773. Here, there is some evidence—Dr. Bux's testimony and the findings in the original autopsy report—that the asphyxiation was caused by manner and means unknown; therefore, the trial court properly included that instruction, but it erred by referring to the grand jury. *See id.*

**B. Harm Analysis**

In our *Sanchez* opinion on rehearing, we determined that the error was harmless in light of the totality of the evidence. *Id.* at 774–75. The error in *Sanchez* was considerably more material to the outcome than the error in this case because two of the four paragraphs permitted convictions based on an alternative manner and means not supported by the evidence. Those allegations referred to "manner and means to the Grand Jurors unknown," and the evidence undisputedly limited the manner and means to a list of known possibilities. *Id.* at 774. Here, by contrast, because Dr. Bux testified, and the original autopsy report showed, that the cause of asphyxia was unknown, the only error in the jury instruction was the minimal reference to the grand jury.

As we expressly stated in *Sanchez* on rehearing, "Neither the manner (the *actus reus* ) nor the means (the "instrument of death") need to be agreed upon unanimously by a jury." *Id.* at 773. We clearly stated that the "jury need only unanimously agree that [a defendant] caused the death of the complainant." *Id.* at 774. Because each of the paragraphs permitting the jury to convict appellant required it to find, beyond a reasonable doubt, that he caused the death of the complainant by asphyxiation, the jury unanimously determined how the complainant died, homicide, and the cause of her death, asphyxia. In light of this unanimous verdict, I cannot conceive of how the four words in the charge referencing the grand jury could have harmed appellant when his own expert testified that the manner and means of death were unknown.

---

**8.** The Honorable Presiding Judge Keller's concurring opinion observes that the "jury charge need not ever specify the (non-statutory) manner and means by which a murder is committed or even that the manner and means is unknown." I think this statement is too broad because this Court has held that, in some circumstances, the State may have to prove facts that it has alleged in an indictment, even those that have elevated its burden of proof beyond what was statutorily required. *See Miles v. State*, 357 S.W.3d 629, 644 (Tex.Crim.App.2011) (requiring State to prove manner and means alleged despite that exceeded statutory manner and means). Here, although this case does not concern a challenge to the adequacy of the indictment, I note that the State pleaded more than was necessary because it needed only to have alleged that appellant caused the death of the complainant (the manner of her death was homicide and not an accident, suicide, or an undetermined death) by asphyxiating her (the means of her death or why she died, such as cancer or a gunshot wound). Whether he asphyxiated her by drowning, strangling, or by any other means is immaterial to what had to be alleged in the indictment and jury instructions. In this case, unlike evidence-sufficiency review, we are reviewing the jury charge that was actually given and not the one that should have been given. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). And the one that was given erroneously included a reference to the grand jury.

### III. Conclusion

I would reverse and remand to allow the court of appeals to consider our opinion on rehearing in *Sanchez*. *See id.* at 767. Alternatively, I would reverse the judgment of the court of appeals and render a judgment affirming appellant's conviction.